UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:23-CV-81315-DMM

KAREN EDITH MURPHY

    Plaintiff,

vs.

TOWN OF JUPITER
and LUKA JURAC an individual,

    Defendants,
_____/

## **PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANT, LUKE JURAC, MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Karen Edith Murphy (hereinafter Karen), pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, hereby file her Response in Opposition to Defendant, Luka Jurac, Motion for Summary Judgement (DE 50) and states as follows:

I.

A. INTRODUCTION

Defendant Luka Jurac (hereinafter Jurac) demands Final Summary Judgment (DE 50 & 51) in response to Plaintiff, Karen E. Murphy (hereinafter Karen) Second Amended Complaint (DE 39) and on his reading of the record. In turn, Karen advocates against summary disposition in this her response addressing relevant case law and in her statement of material facts.

## B.  SUMMARY OF ARGUMENT

Jurac mishandled an obvious mental health crisis afflicting Karen when the two interacted on January 1, 2020. Failing to see the mental health crises, despite being told Karen is suicidal at least twice by Michael Murphy, Jurac disregarded his training and Jupiter policy. In place of initially telling Karen, who pleaded for mental health services, that Jurac would take her in for mental health care, and eschewing verbal commands, Jurac took Karen down to a concrete surface in a manner that resulted in multiple injuries to Karen.

Jurac misstates the sequence of events immediately preceding the take down. Jurac asserts he warned Karen to not enter the residence before she stood up from the stoop. This assertion is belied by Juracs deposition testimony. Jurac fails to address all material aspects of the takedown. Most notably, Jurac occludes his act of pushing Karen 's face down onto the concrete surface. Jurac shifts the blame to Karen for the discreet and telling injury to one of Karen's elbows.

Jurac used an objectively unreasonable level of force in effecting the detention of Karen who was not resisting and had not violated a properly timed instruction to not enter the house.  As such, he violated Karen's clearly established right to be free of gratuitous force during an otherwise (barely) lawful arrest. Under the record facts, Summary Judgment is not appropriate.

## C. SUMMARY JUDGMENT STANDARD

At the Summary Judgment stage, "we view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Stryker v City of Homewood*, 978 F. 3d 769, 773 (11th. Cir. 2020).

The probity accorded to body cam footage is limited, whereas here, the footage is burdened with technical limitations. "Where no video exists or where the videos do not answer all the questions or resolve all the details of the encounter, we view the evidence in light most favorable to Plaintiff. *Cantu v City of Dothan*, 974 F. 3d 1217, 1226- 27 (11th Cir. 2020)

## II.  ARGUMENT

### A. JURAC FAILED TO PERCEIEVE AN OBVIOUS MENTAL HEALTH CRISIS AND USED EXCESSIVE FORCE

Jurac admits Karen presented him a mental health crisis. Notably, Michael Murphy told Jurac of the suicidal statements no fewer than two times before Jurac first physically encountered Karen. (DE 51; Paragraph 40). Under this factual circumstance, the application of force is constitutionally excessive. *Graham v Connor*, 490 U.S. 386, 390 (1989).

Additionally, under Juracs own training on scenarios involving suicidal citizens, he should have announced to Karen that he was arresting her for Baker

Act[1] reasons. If someone says they want to kill themselves, that statement is immediate cause for Baker Act. (Exhibit A to Plaintiff's Statement of Material Facts filed contemporaneously with this response; Page 14, lines 2-11 and Page 17, lines 1-13). The verbal command, put your hands behind your back, is the first level of force used to detain a suicidal person. (Exhibit A to Plaintiff's Statement of Material Facts; page 15, lines 11- 18).

### B. APPLICATION OF GRAHAM FACTORS TO THE CASE AT HAND

*Graham* factors provide the general contours to determine whether the force used by Jurac is reasonable or unreasonable. *Graham* at 390.

1) Severity at crime at issue. Karen has provided record evidence of a mental health crisis. On the other hand, Jurac claims justification for the arrest. He claims Karen obstructed an ongoing investigation of a domestic incident. Karen's deed of obstruction is her act of opening a door to her residence. The only time Jurac told Karen to not go in the house was after Karen got up from the stoop and pivoted her body so that her back was to Jurac. (DE 56; Exhibit D; Page 107, lines 8-19. And Exhibit A to Plaintiff's Statement of Material Facts; Page 60, lines 17-24). At most, Karen committed a non-violent misdemeanor[2].

---

[1] Chapter 394 of the Florida Statutes.
[2] F.S. 843.02   Resisting officer without violence to his or her person.—Whoever shall resist, obstruct, or oppose any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Florida Commission on Offender Review or any administrative aide or supervisor employed by the commission; county probation officer; parole and

2) Immediacy of threat to officers. By the time of the takedown, Karen had not stuck Jurac or threatened violence. (Exhibit A to Plaintiff's Statement of Material Facts; page 75, lines 9-14). Karen did not have a weapon. She no longer had access to her RV.

3) Karen did not resist. Karen allowed the police officers to grab her hands and wrists. (Exhibit A to Plaintiff's Statement of Material Facts; page 58, lines 1-3).

4) Karen did not meaningfully evade arrest. Fundamental to this analysis is that Jurac gave the command not to enter the house, only <u>after</u> Karen stood up and pivoted towards the door. Jurac arrested Karen for attempting to enter the residence despite that he did not warn her before she stood up. (DE 56; Exhibit D; page 107). Jurac himself cannot definitively attest that he furnished Karen enough time to comply with the command to not enter the house before he took Karen down. Jurac cannot say with certainty that he provided Karen enough time to comply with his command [to not enter the house] before he grabbed her. (Exhibit A to Plaintiff's Statement of Material Facts; page 78, lines 8-12). Clearly, only a very limited amount of force could be applied.

---

probation supervisor; personnel or representative of the Department of Law Enforcement; or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

## C. ANALYSIS OF JURAC CASE LAW ON GENERALIZED CONSTITUTIONAL VIOLATION
### Responds to Page 4-11 of Jurac Motion

It its effort to persuade this court that Jurac did not violate Karen's Fourth Amendment right to be free of excessive force during an arrest, Jurac cites to numerous cases applying the standards enunciated in *Graham*, supra. While *Graham* controls, the cases cited by Jurac are readily distinguishable from the case at bar. Jurac's authorities present scenarios involving serious crimes and or with violent resistance or active fleeing.

In this regard, *Penley v Eslinger*, 605 F. 3d 843, 845 (M.D. Fla. Jun. 5, 2009) involved an student who had taken a firearm to school and held a classmate hostage. In *Garczynski v Bradshaw*, 573 F. 3d 1158, 1168 (11th Cir. 2009) law enforcement is confronted by an <u>armed</u> suicidal man. That individual pointed a gun at law enforcement. Naturally, the court affirmed the grant of qualified immunity to those officers. The Plaintiff in *Jean Baptiste v Gutierrez*, 627 F. 3d 816, (11th Cir. 2010), pointed a gun at law enforcement, standing a mere 8-10 feet away. At 819. He had committed kidnapping with a weapon, aggravated battery and burglary. At 819. The court rightly concluded the use of deadly force was justified under *Graham*. At 821.

Not content with swinging a hatchet at law enforcement, the violent and crazy suspect also discharged a firearm at a police officer standing close by. Law

enforcement justifiably responded with deadly force. *Menuel v City of Atlanta*, 25 F. 3d 990, 996 (11th Cir. 1994). Joining these dangerous individuals who received their just deserts is the Plaintiff in *Robinson v Arrugueta*, 415 F.3d 1252, 1254 (11th Cir. 2005) who used a vehicle as a deadly weapon and drove the vehicle towards a nearby police officer.

Karen's does not seek redress solely or even primarily due to the handcuffing. As such, the cases of *Rodriguez v Farrell*, 280 F. 3d 1341, 1345- 46, (11th Cir. 2002) involving the common technique of moving an arrestee's arm up near the suspect's shoulder blade, and *Mladek v Day*, 320 F. Supp. 2d 1373, 1374 (2004) in which law enforcement did not throw the suspect down to the ground, do not address the facts at hand. Here, Jurac forced Karen's head down to the ground. (Exhibit A to Plaintiff's Statement of Material Facts; page 79, lines 7- 9). Additionally, Karen sustained a contused elbow. (Exhibit A to Plaintiff's Statement of Material Facts; page 95, lines 5- 9).

The de minimus force applied by law enforcement in *Durruthy v Pastor*, 351 F.3d 1080 (11th Cir. 2003) and *Nolin v Isbell*, 207 F. 3d 1253 (11th Cir. 2000) distinguish those cases from the takedown of Karen witnessed by Michael Murphy. (DE 56; Exhibit C; Affidavit of Michael Murphy dated March 26, 2024, First Page, Paragraphs 3-6).

In *Nolin*, that Plaintiff sustained only transient bruising from a police officer's shove and a knee to the back. The police officers in *Durruthy*, placed the suspect on the ground. The opinion is silent on whether that Plaintiff sustained any injuries as a result of that nonviolent take down. Accordingly, neither *Durruthy* nor *Nolin* shed light on whether Jurac's use of force is reasonable or excessive.

### III.   THE MANNER OF THE TAKE DOWN IS IN DISPUTE

Jurac posits a benign takedown, consisting of two gentle takedowns. One takedown is accomplished by Jurac. (DE 44, paragraph 12). The other placing down is effected by Jurac and Kitchens (DE 44, paragraphs 13 and 14). On the other hand, Micheal Murphy (DE 56; Exhibit C; page 1 paragraphs 3-6) saw a violent takedown, indicative of an application of unreasonable force. Photographs of Karen's injuries caused by Jurac, taken at the jail (DE 56; Exhibit G; first 5 pictures) and at St. Mary's Hospital (DE 56; Exhibit F; first 10 pictures) reveal abrasions and contusions that belie Jupiter's characterization of two "place downs" onto the concrete surface. The disputed versions must be presented to the fact finder.

### IV.   THE POST HANDCUFFING EVENTS ARE IRRELEVANT TO THE GRAHAM ANALYSIS

Jurac refers to many events occurring after the handcuffing process is over (DE 51; paragraph 32, 34-36) thus, implying the post handcuff events carry significance. Jurac, on the other hand, admits spitting at an officer and the

fortuitous discovery of Marijuana occurred after he handcuffed Karen. Moreover, the Marijuana and spitting are irrelevant. (Exhibit A to Plaintiff's Statement of Material Facts; page 85, lines 19- 22, page 86, lines 19- 21 and page 87, lines 2- 9).

These post use of force events are legally irrelevant to the analysis of the use of force incidental to handcuffing. *Graham* analysis is based "at the moment" force is used. *Graham* at 396.

The criminal charges and their disposition (DE 51, Paragraphs 37 and 38) are both misleading and irrelevant. Karen did not accept a plea entailing the charge of resisting arrest with violence as codified in Fla. Stat. 843.01. Rather she accepted a plea to the misdemeanor charge of obstruction. Therefore, the concerns of a collateral attack on a sentence issued by a state court are not implicated by Karen seeking redress for Jurac's resort to excessive force. See *Heck v Humphrey,* 512. U.S. 477 (1994).

### V. JURAC VIOLATED KARENS CLEARLY ESTABLISHED CONSTITUNAL RIGHT TO BE FREE OF EXCESSIVE FORCE DURING AN ARREST
### (Responds to Pages 11-15 of Jurac's Motion)

This court is tasked with applying a two-step inquiry to determine whether, at the summary judgment stage, Jurac is entitled to qualified immunity. *Saucier v Katz*, 533 U.S. 194, (2001) as modified by *Person v Callahan*, 555 U.S. 223 (2009).

Karen has demonstrated a violation of her rights to be free of excessive force during her arrest. *Graham v Connor*, 490 U.S. 386 (1989) and *Lee v Ferraro* (2002).

The case law of *Fils v City of Aventura*, 647 F3d 1272, 1288-89 (11th Cir 2011) and *Stephens v DeGiovanni*, 852 F3d 1298, 1322-24 (11th Cir. 2017) clearly <u>established</u> by January 1, 2020, Karen's right as a non-resisting, non-fleeing misdemeanant to be free of the unreasonable force used by Jurac.

(*Ingram v Kubik,* 30 F 4th 1241, 1247 (11 Cir. 2022).  Force, including take down onto hard surface not justified against veteran experiencing a mental health crisis.

The Court's holding in and the analysis of precedent used in arriving at its holding in *Ingram* compels denial of Jurac's Motion.  Due to the similarity of facts between the case before this court and *Ingram*, *Ingram* is accorded extensive discussion and analysis in this response.

Kirby Ingram, (hereinafter Kirby) appealed the dismissal of his Complaint for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). Kirby sought redress against law enforcement for both unlawful seizure and excessive force. (at 1247).

Both Kirby and Karen had preexisting mental health h issues. Law enforcement appeared at Kirby's home to conduct a welfare check after a report that Kirby had slit his wrist with a knife. (at 1247). Similarly, Jurac traveled to

Karen's [former] residence in response to all 911 call indicating Karen had claimed she would harm herself. (DE 39; Second Amended Complaint Paragraph 9 and 10 and DE 51; Paragraphs 1, 2, 3, and 7). One of the deputies body slammed Kirby headfirst, causing a serious neck injury. This event occurred in October 2017. (at 1247).

Karen alleges Jurac violently and forcefully slammed Karen down onto the concrete slab by a side door to the residence. (DE 39; Paragraph 38). Two dissimilarities between Kirby and Karen are present by Kirby having a knife. Karen did not have a weapon. Kirby actively fled law enforcement running into a cotton field. (at 1248). Karen did not actively flee from law enforcement. (DE 39; DE 39; Paragraphs 35-38, and DE 56; Page 107, lines 8-19).

It is apparent that Kirby presented a threat to the officer's safety. In contrast Karen presented no threat to either law enforcement or to third parties at the scene. (DE 39; Paragraphs 40-41, and Plaintiffs Response to Defendant Luka Jurac Statement of Material Facts, Exhibit A; page 75, lines 9-14). Based on Kirby's allegations the Court reversed the District Court's granting dismissal of the excessive force claim. (at 1247).

In reversing the dismissal of the excessive force count, the *Kirby* Court cited to the Fourth Amendment's right to be free from the use of excessive force in the course of an arrest and cited to its precedent of *Weiland v Palm Beach City*

*Sheriff's*, 792 F. 3d 1313, 1326 (11th Cir. 2015). Notably *Weiland* is one of many cases from the Eleventh Circuit that deems Jurac's use of force to be unconstitutional.

In arriving at reversal, the Kirby Court, citing its precedent in *Mercado v City of Orlando*, 407 F. 3d 1152, 1157-58 (11th Cir. 2005), applied the *Graham v Connor* (citation omitted) framework to mental health seizures. (at 1251).

The *Kirby* Court reiterated that the extent of the injury inflicted by the arresting officer is a factor to consider in evaluating the reasonableness of the force used citing to *Helm v Rainbow City*, 989 F. 3d 1265, 1273 (11th Cir. 2021). Accordingly, the Court deemed Kirby had satisfied his pleading burden to show a violation of his constitutional right.

The right of Karen is clearly established by the broad <u>clearly established</u> principle enunciated in Eleventh Circuit precedent holding that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force. *Hadley v Gutierrez*, 526 F. 3d 1324, 1330 (11th Cir. 2008). Karen alleged she is not resisting arrest (DE 39; Paragraph 40 and 41 and Plaintiffs Response to Defendant Luka Jurac Statement of Material Facts, Exhibit A; page 76).

The *Kirby* court relied on the principal enunciated in *Smith v Mattox*, 127 F. 3d 1416 (11th Cir. 1997) that if an arrestee demonstrates compliance, as Karen did (DE 39; Paragraphs 42, 43 and Plaintiffs Response to Defendant Luka Jurac

Statement of Material Facts, Exhibit A; page 58) but the officer nonetheless inflicts gratuitous and substantial injury using ordinary arrest tactics, then the officer may have used excessive force, even if the arrestee "was initially recalcitrant and even acted aggressively toward the officer." (at 1253).

This court's precedent further establishes that Jurac's headfirst body slam of Karen who was not resisting arrest, constitutes excessive force. *Hadley v Gutierrez*, 526 F. 3d 1324, 1330 (11th Cir. 2008).

The allegations in Karen's Complaint, speak to violation of a clearly established right to be free from excessive force. As such, her complaint may not be dismissed under the standards of Rule 12(c).

The *Graham* matrix, id at 496, includes an inquiry into the severity of the injury. Graham's focus on severity of injury is followed in *Lee v Ferraro*, 284 F3d 1188 (11th Cir. 2002).

### VI.     JURAC IS NOT ENTITLED TI QUALIFIED IMMUNITY ON THIS RECORD
**(Responds to Jurac Motion Paged 11-15)**

Jurac cites to cases where qualified immunity has been applied to the response of law enforcement to violent criminals. In *Brosseau v Haugen*, 541 U.S. 194, 196-97 (2004), law enforcement is confronted by a fleeing felon using a vehicle as a weapon. *McCullough v Antolini*, 559 F. 3d 1201, 1207 (11th Cir. 2009), and *Long v Slaton*, 508 F. 3d 576, 579 (11th Cir. 2007) are both centered on

the use of a vehicle as a dangerous weapon. Notably, the ultimate plaintiff in *Long*, stole a police cruiser.

The Plaintiff in *Lumley v. City of Dade City*, 327 F. 3d 1186 (11th Cir 2004), Lumley shot a Wells Fargo point blank during a robbery at 1189. Moreover, that law enforcement use of force, alleged to be excessive was a tightening of straps to a hospital bed. At 1196.

These cases involving violent and fleeing felons do not serve as helpful precedent. Similarly, the suspect later *Plaintiff in Montoute v Carr*, 114 F. 3d 181 (11th Cir.1997), had a sawed-off shotgun in his possession in an area where shots had been recently fired. At 183. *Montoute*, refused to drop the weapon. At 183. Lastly, he fled the scene before being accorded deadly and justified force in order to protect others. At 185. As the *Graham* inquiry is fact dependent, Juracs cases do not advance his demand for qualified immunity.

*Post v City of Fort Lauderdale*, 7 F. 3d 1552, 1559 (11th 1993) is distinguishable as Lino, that suspect raised his hands in a manner interpreted to be resistance. Lino had used violence to resist arrest on a prior occasion. At 1559. Lino waited three years to receive medical care, at 1559. On the other hand, Karen offered no resistance (Exhibit A to Plaintiff's Statement of Material Facts; page 76, lines 14-18). Unlike Lino, Karen required and received immediate medical care. (DE 56; Exhibit E). Neither, *Storck v City of Coral Springs*, 354 F.3d 1307 (11th

Cir. 2003) or *Hudgins v City of Ashburn*, 890 F. 2d 396, (11th Cir. 1989) are excessive force cases. Thus, their utility to this case is quite limited.

## CONCLUSION

For the foregoing reasons, Plaintiffs request this court deny the Defendants Summary Judgment Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **3 day of April 2024**, I electronically filed the forgoing with the Clerk of Court by using the CM/ECF system which will send a true and correct copy of the forgoing through a notice of electronic filing to: Counsel for Defendants, Counsel for Luka Jurac, Ramon Vazquez, Esq., Michael J. Roper, Esq.; Roper, P.A., 2707 E. Jefferson Street Orlando, FL 32803, at rvazquez@roperpa.com, smiddleton@roperpa.com, mroper@roperpa.com, ysuedmeyer@roperpa.com; and Counsel for Town of Jupiter, Lyman H. Reynolds, Jr., Esq. and James R. Jimenez, Esq., Roberts, Reynolds, Bedard & Tuzzo, PLLC, 470 Columbia Dr., Bldg. C101, West Palm Beach, FL 33409 at service_LHR@rrbpa.com and lreynolds@rrbpa.com.

Respectfully Submitted,

By: */s/ Oscar Syger*                .
OSCAR SYGER, ESQUIRE
FLORIDA BAR NUMBER: 381373
*Attorney for Plaintiff*

**LAW OFFICES OF OSCAR SYGER, P.A.**
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
Telephone:  (561) 599-0638
Email: oscarsyger1218@gmail.com
Secondary Email: secretaryofoscarsyger@gmail.com